**Nevio RESTREPO, Petitioner,**

v.

**Edward MCELROY, Interim Field Office Director for the Bureau of Immigration and Customs Enforcement, Respondent.**

No. 99–CV–2049 (JBW).

United States District Court,
E.D. New York.

Feb. 18, 2005.

Bretz & Coven, LLP, by Matthew Guadagno, Kerry W. Bretz, Jules E. Coven, New York, NY, for the Petitioner.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Attorney for the Respondent, by Margaret M. Kolbe, Assistant United States Attorney, Brooklyn, NY, for the Respondent.

MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

I. Introduction

The Court of Appeals for the Second Circuit reversed this district court's order granting a non-citizen's petition for a writ of habeas corpus based on the denial of section 212(c) discretionary relief from deportation. *See Restrepo v. McElroy,* 369 F.3d 627 (2d Cir.2004). Nevertheless it concluded that petitioner may have postponed filing an affirmative application for

section 212(c) relief relying on its continued availability, in the hopes that he could present a stronger record of rehabilitation and community ties at a later time.

On remand the appellate court requested the district court to: (1)(a) determine whether a non-citizen in petitioner's situation should be required to make an individualized showing that he decided to forgo an opportunity to affirmatively file for section 212(c) relief in reliance on his ability to file at a later date; and, (b) if he must, whether petitioner can make such a showing; or whether, (c) a categorical presumption of reliance by any alien who might have applied for section 212(c) relief when it was available, but did not do so, is appropriate; (2) make relevant findings of fact; and (3) determine whether the petitioner in this case should be granted relief.

For the first time the government now argues that petitioner is statutorily ineligible for section 212(c) relief. Neither the district court nor the Court of Appeals for the Second Circuit previously had the benefit of this argument.

It has been established by the government, and conceded by the petitioner, that the petitioner had been in prison for more than five years by September 9, 1997, the date the immigration judge ordered him deported. At that time he was statutorily barred from seeking section 212(c) relief because of the length of time he had been imprisoned. The government has thus established that, as a result of this period of incarceration, petitioner was no longer eligible for section 212(c) relief, and he does not fall into the category of aliens that reasonably could have relied on the continued availability of section 212(c) relief. There could be no reason for someone to postpone filing for so long that he becomes statutorily ineligible for the relief sought, in this case by triggering the five year bar.

The remaining questions posed by the Court of Appeals have thus become moot.

Though the parties did not apply for an amendment of the order of remand, seeking the withdrawal of the other questions posed, in oral argument they conceded that these questions were now irrelevant to the disposition of the case. There is no need, therefore, given the factual circumstances of the instant case, for the district court to consider an abstract rule regarding categorical or individualized inquiries, or to provide what would now be an advisory opinion.

## II.  Facts and Procedural History

Nevio Restrepo ("Petitioner") is a Colombian citizen who entered this country as a lawful permanent resident in 1969. In 1992, he was convicted of conspiracy to distribute cocaine. On February 7, 1992, he was sentenced to 78 months imprisonment, or 6½ years, with credit for time served. Petitioner had been in custody since his arrest on February 17, 1991, nearly a year before. On October 28, 1996, the INS commenced proceedings to have him deported. At a hearing before an immigration judge, petitioner conceded deportability. The immigration judge held that petitioner was ineligible for any form of relief and entered a deportation order on September 9, 1997; by that time, he had served approximately five years and seven months, not including pre-trial custody, from the date his sentence was imposed. Petitioner appealed, and on January 13, 1999, the Board of Immigration Appeals dismissed his appeal, holding that the nature of his 1992 conviction rendered him ineligible for section 212(c) relief pursuant to section 440(d), although he was convicted prior to its enactment.

Pre-trial custody, which is later credited toward time served, has not clearly been held to count toward establishing the section 212(c) five-year bar. In *Buitrago-Cuesta v. INS*, 7 F.3d 291 (2d Cir.1993), the Court of Appeals affirmed the BIA's

holding that a defendant had served a term of imprisonment of at least five years, beginning from the date of the conviction, July 3, 1986, not the date of pretrial incarceration, March 7, 1986. *Id.* at 296. Several courts in this circuit have considered the question of whether pretrial incarceration counts toward the five-year period of section 212(c) eligibility; however, their opinions remain unreported.

The most relevant BIA opinion appears to be *Matter of Valdovinos,* 18 I. & N. Dec. 343, 1982 WL 190702 (BIA 1982). The issue in that case was whether pretrial custody could count toward the 180–day bar precluding the establishment of good moral character necessary for voluntary departure under what was then section 1254(e) of Title 8 of the United States Code. The BIA reasoned as follows:

> [T]he respondent contends that the 41 days he spent incarcerated prior to his first conviction should not count in estimating the amount of time he spent incarcerated for purposes of the ... preclusion of good moral character. He asserts that since a criminal defendant is presumed innocent until proven guilty, the time spent incarcerated prior to his conviction should not count as confinement "as a result of conviction," ....

> We disagree with the respondent's contention. He was convicted pursuant to the [state] Penal Code [which] specifies that a criminal defendant is given credit for pre-conviction confinement when determining the date of his release from custody. Consequently, the time the respondent spent incarcerated prior to his ... conviction is considered time served under [state] law.... Therefore, we find without merit his contention that the time he spent incarcerated prior to his ... sentencing should not be counted in determining the time he was incarcerated as a result of [this] conviction.

*Id.* at 344–45, 1982 WL 190702. At least one reported opinion, albeit from a district court in another circuit, concurred with the BIA:

> In this court's estimation, it logically follows that Petitioner's "term of imprisonment" included the [time] the sentencing court credited to Petitioner for the time he "served" pretrial. In other words, Petitioner "served ... a term of imprisonment of at least 5 years." Accordingly, section 212(c) relief is unavailable.

*Gordon v. Ashcroft,* 283 F.Supp.2d 435, 439 (D.Mass.2003).

In this case, the pre-trial custody question is ultimately of no moment, because, at the time the deportation order was issued, the petitioner had served well over five years, not including his term of pretrial custody. It is mentioned, however, because the government's pleadings assume that pre-trial custody counts toward the section 212(c) five-year bar, a proposition undisputed by the petitioner, though no authority was provided to the court on the question.

Prior to the amendment of the immigration laws in 1996, section 212(c) of the Immigration and Nationality Act ("INA") "afforded one of the most important forms of relief available to aliens facing deportation." *Edwards v. INS,* 393 F.3d 299, 302 (2d Cir.2004). Former section 212(c) allowed non-citizens in removal proceedings meeting the statutory criteria to apply for a discretionary waiver of deportation. *See* 8 U.S.C. § 1182(c) (1995). To qualify for such relief, an alien was required to show that he or she: (1) was a lawful permanent resident of the United States; (2) had an unrelinquished domicile of seven consecutive years; and (3) had not committed an aggravated felony for which he or she had served a term of at least five years. *See id.* The Attorney General could exercise

discretion in waiving the deportation of an alien who satisfied these criteria. In the years leading up to 1996, the year the INS sought to have Mr. Restrepo deported, over half of the applications for 212(c) relief were granted. *See INS v. St. Cyr,* 533 U.S. 289, 296 n. 5, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which narrowed the scope of section 212(c). *See* Pub.L. No. 104–132, § 440(d), 110 Stat. 1214 (1996). Section 440(d) barred categories of aliens convicted of crimes, among them aliens convicted of aggravated felonies, from seeking 212(c) relief. *See id.* Congress then passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, § 304(b), 110 Stat. 3009–546 (1996), which repealed section 212(c) entirely, replacing it with a provision giving the Attorney General discretion to cancel the removal of narrowly defined groups of non-citizens—not including those who had a committed one of a growing number of crimes defined as aggravated felonies under immigration law. *See* 8 U.S.C. § 1229b(a). *See generally INS v. St. Cyr,* 533 U.S. 289, 294–97, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). "Petitioner's case, however, is not controlled by the IIRIRA, since that law only applies to deportation proceedings instituted after April 1, 1997." *Restrepo,* 369 F.3d at 630 n. 4.

Petitioner was granted a writ of habeas corpus by the district court pursuant to Section 2241 of Title 28 of the United States Code, based on the conclusion that AEDPA's elimination of section 212(c) discretionary relief was impermissibly retroactive as applied, because his criminal conduct, which formed the basis for the deportation order, preceded the enactment of AEDPA. The district court issued its opinion on September 22, 1999,

prior to the United States Court of Appeals for the Second Circuit's holdings in *St. Cyr v. INS,* 229 F.3d 406 (2d Cir.2000) ("*St. Cyr I* "), and *Domond v. INS,* 244 F.3d 81 (2d Cir.2001), and before the Supreme Court's affirmance of *St. Cyr I* in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("*St. Cyr II* ").

The conclusion that section 440(d) could not be applied retroactively to Mr. Restrepo was based on prior decisions by the district court holding that section 440(d) could not be applied to an alien whose criminal conduct preceded AEDPA's enactment. These cases, all prior to *St. Cyr I,* held that Congress did not intend for section 440(d) to be applied retroactively and that, assuming the legislative intent was ambiguous, the application of 440(d) to pre-AEDPA criminal conduct would have an impermissible retroactive effect in view of the "familiar considerations of fair notice, reasonable reliance and settled expectations" set forth in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See Maria v. McElroy,* No. 98–CV–6596, 1999 WL 680370 (E.D.N.Y. Aug.27, 1999), *superseded by* 68 F.Supp.2d 206, 228–30 (E.D.N.Y.1999); *Pottinger v. Reno,* 51 F.Supp.2d 349 (E.D.N.Y.1999).

The Court of Appeals for the Second Circuit ultimately rejected the position taken by the district court that the application of section 440(d) to pre-AEDPA criminal conduct by itself has an impermissibly retroactive effect. *Cf. Restrepo,* 369 F.3d at 632 n. 8 (noting the punitive nature of deportation sanctions and that "in the context of criminal sanctions, similar retroactive increases in penalties have been considered to raise serious concerns under the *Ex Post Facto* Clause."). Accordingly it vacated the judgment of the district court as "contrary to current precedent." *Id.* at 632.

Nevertheless, the Court of Appeals rejected the government's contention that it should simply reverse the judgment and hold that petitioner was ineligible for section 212(c) relief. Instead, it held that there existed an alternative basis for finding impermissible retroactivity, which might apply to petitioner's case—the option of filing an affirmative application for section 212(c) relief, an option available at the time of petitioner's conviction in 1992.

Petitioner argued on appeal that he decided to forgo this option before he was deported in reliance on his ability to apply for section 212(c) relief at a later time, when his case presumably would be stronger due to a longer record of rehabilitation and community ties. He suggested that AEDPA's elimination of section 212(c) relief, as a result, would disrupt his reasonable reliance and settled expectations. The Court of Appeals held that "the crux of Petitioner's argument is correct under both the Supreme Court's and our retroactivity jurisprudence." *Restrepo*, 369 F.3d at 633. It held that "a guilty plea is not the only kind of reliance that would make abolition of 212(c) have an impermissible retroactive effect under *Landgraf* ...." *Id.* at 638 n. 18.

The Court of Appeals directed this court to determine critical factual and legal issues on remand. It wrote:

Having concluded that Petitioner's retroactivity argument is valid, we remand this case to the district court for it to determine whether Petitioner can himself claim the benefit of this argument. We do so because we deem it wise to let the district court decide, in the first instance, whether an alien such as Petitioner must make an *individualized* showing that he decided to forgo an opportunity to file for 212(c) relief in reliance on his ability to file at a later date (and, if he must, whether Petitioner can do so), or whether, instead, a *cate-gorical* presumption of reliance by any alien who might have applied for 212(c) relief when it was available, but did not do so, is more appropriate.

*Id.* at 638–39 (emphasis in original). The Court of Appeals additionally provided this court with an opportunity to make the findings of fact necessary to determine whether petitioner could claim the benefit of his argument. *See Restrepo*, 369 F.3d at 633.

### III. Law

Retroactivity jurisprudence in this circuit surrounding the continued availability of section 212(c) relief for criminal aliens has evolved significantly in recent years. *See, e.g., St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000) (holding that aliens who pled guilty to certain deportable offenses at a time when they were eligible for section 212(c) relief remained eligible for such relief after the passage of AEDPA); *Domond v. INS*, 244 F.3d 81, 86 (2d Cir.2001) (holding that an alien whose criminal conduct preceded, but whose guilty plea followed, the enactment of AEDPA could be denied section 212(c) relief pursuant to section 440(d)); *Khan v. Ashcroft*, 352 F.3d 521 (2d Cir.2003) (reaffirming the holding in *Domond* that section 212(c) relief could be denied to petitioners whose guilty pleas followed AEDPA's enactment); *Rankine v. Reno*, 319 F.3d 93, 99 (2d Cir.2003) (holding that aliens who opted to go to trial when section 212(c) relief was available were prohibited from claiming that they made the decision in reliance on the availability of such relief); *Thom v. Ashcroft*, 369 F.3d 158 (2d Cir.2004) (affirming *Rankine's* holding that aliens who opted to go to trial could not later claim they relied on the availability of section 212(c) relief). For a recent discussion of the evolution in the caselaw, see *Restrepo v. McElroy*, 369 F.3d 627, 631–633 (2d Cir.2004) and *Restrepo v. McElroy*, 369

F.3d 627, 641–44 (2d Cir.2004) (Calabresi, J., concurring). In addition, the Court of Appeals has recently held that an erroneous denial of the opportunity to apply for section 212(c) relief may constitute a due process violation. *See United States v. Copeland,* 376 F.3d 61, 70–71 (2d Cir.2004).

Most recently, in *Edwards v. INS,* 393 F.3d 299 (2d Cir.2004), the Court of Appeals considered whether non-citizens who were erroneously denied the opportunity to apply for section 212(c) relief should be barred from seeking such relief as a result of their *subsequent* accrual of five or more years of imprisonment on one or more aggravated felony offenses. The Court of Appeals held that the award of *nunc pro tunc* relief was the appropriate remedy for the non-citizens before it, both of whom accrued more than five years of imprisonment subsequent to the legally erroneous denial of their section 212(c) applications. *See id.* at 312. *Edwards* does not apply to the instant case because here the question is whether petitioner reasonably relied on his continued ability to apply *before* he was denied the opportunity to seek section 212(c) relief. *Cf. United States v. Scott,* 394 F.3d 111 (2d Cir.2005) ("[T]he district court should reconstruct events as they existed at the time of the disputed deportation proceeding, without considering future occurrences.").

### IV. Application of Law to Facts

The government has proven by clear and convincing evidence that, having served more than five years in prison prior to the immigration judge's issuance of the deportation order, Mr. Restrepo is statutorily ineligible for section 212(c) relief. He cannot be assumed to have reasonably relied on the continued availability of this relief because it would be patently unreasonable to postpone applying for relief for so long as to become statutorily ineligible for the relief sought. Based on this finding of fact Mr. Restrepo cannot claim the benefit of the argument he raised on appeal.

There is no reason to remand this case to immigration authorities for the purpose of granting a hearing that would necessarily result in a denial. In order to be considered for section 212(c) relief, petitioner would have to show that he had not served five or more years in prison. The petitioner does not argue that he had spent less than five years in prison at the time he was ordered deported and thus there is no reason to believe that the merits of his application could be reached. Remand would be futile because there is no factual dispute. *See, e.g., NLRB v. American Geri–Care, Inc.* 697 F.2d 56, 64 (2d Cir. 1982) ("[A] reversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather, ... reversal and remand [are required] *only* where there is a significant chance that but for the error, the agency might have reached a different result."). The argument made by petitioner that it would be unfair to apply the law, though appealing, has no merit.

### V. Conclusion

Upon further inquiry on remand, for reasons not before the Court of Appeals for the Second Circuit, it is apparent that no issue remains in dispute. The remaining questions posed by the Court of Appeals are moot. The petition for habeas corpus is denied.

SO ORDERED.