# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3807

_____

Orwa Ali Al-Saadoon; Farok Abdulmajid Hamod

*Petitioners - Appellants*

v.

Loretta E. Lynch, Attorney General of the United States of America; Janet Napolitano, Secretary of the United States Department of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Services; Sharon V. Dooley, Field Office Director, United States Citizenship and Immigration Services

*Respondents - Appellee*s

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: March 14, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Farok Abdulmajid Hamod and his wife, Orwa Ali Al-Saadoon, appeal the district court's[1] denial of their petitions for naturalization. They came to this country on a religious-worker visa in 1999 when Hamod accepted a position at the Al-Amal School in Minnesota. Hamod's visa prohibited him from changing employers without prior authorization from the Immigration and Naturalization Service (INS). In August 2000, the Islamic Cultural Community Center (ICCC), a different legal entity, filed a petition seeking authorization to employ Hamod; the petition was granted in December 2000. But the information that Hamod provided on his naturalization application reveals that he began working for the ICCC on July 15, 2000, before the ICCC had filed the petition for authorization. On this basis, the district court denied Hamod's and Al-Saadoon's petitions for naturalization. We affirm.

## I. *Background*

Hamod and Al-Saadoon are natives of Iraq. They entered this country in June 1999 when the Al-Amal School in Minnesota invited Hamod to serve as a teacher. Hamod entered on a religious-worker visa that permitted him to work only for the religious organization sponsoring his entry into the country, the Al-Amal School.

As a respected sheikh and Islamic scholar, Hamod grew increasingly involved in the local Muslim community at the ICCC. His activities included leading prayer services, giving lectures, counseling, conducting marriage ceremonies, and holding seminars. On August 2, 2000, the ICCC filed an I-360 Petition for Special Immigrant Religious Worker on Hamod's behalf, seeking to permanently employ him as an Imam. The Al-Amal School supported the petition, confirming that it had "initially employed [Hamod] as a religious teacher in June 1999 pursuant to an R-1 visa" and that "[h]e later became the Religious Curriculum Director at the school." The INS

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

granted the ICCC's petition on December 8, 2000. In 2002, Hamod and Al-Saadoon adjusted to permanent-residence status.

In 2007, Hamod and Al-Saadoon sought naturalization. The naturalization application included the following query, "Where have you worked . . . during the last five years?" Below the question, the application provided blanks for "Employer or School Name," "Dates," and "Your Occupation." Hamod filled in "Islamic Cultural Community Center," "07-15-2000" to the "present," and "president and Imam." He signed the application, certifying its accuracy under penalty of perjury. The ICCC supported Hamod's application with a letter certifying that "Dr. Farok Hamod is working for The Islamic Cultural Community Center as president and Imam for this organization since 2000 until now." In a sworn interview connected with his application, Hamod said that he had been working for the ICCC "[s]ince 2000." The United States Citizenship and Immigration Services (USCIS) denied Hamod's and Al-Saadoon's applications for naturalization, concluding that they lacked good moral character.

Hamod and Al-Saadoon then administratively appealed the denial of their applications. In a sworn interview related to his appeal, Hamod testified that he began working for the ICCC in 2000. Later he said that he began working for the Al-Amal School in 1999 and was employed there for "less than a year" before he started working for the ICCC. He agreed that the Al-Amal School and the ICCC are separate entities. The USCIS affirmed the denial of Hamod's and Al-Saadoon's petitions for naturalization. Hamod and Al-Saadoon then filed this action in the district court, seeking de novo review of the denial of their petitions pursuant to 8 U.S.C. § 1421(c).

In preparation for the district court's review, Hamod gave sworn testimony at a pretrial deposition. During this deposition, he stated that he had no reason to doubt his former testimony that he had been employed by the ICCC since 2000. He also testified that he was working for the ICCC as an Imam in April 2000. After a hearing,

the court concluded that Hamod had not lawfully been admitted to permanent residence status because he accepted employment from the ICCC "starting at least in early to mid-2000," before he was authorized to do so. The court therefore concluded that he was not eligible for naturalization. The court also denied Al-Saadoon's petition for naturalization because her status is dependent upon Hamod's. Hamod and Al-Saadoon appeal. We have jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291.

## II. *Discussion*

The district court conducted a de novo review of Hamod's and Al-Saadoon's petitions for naturalization, making its own findings of fact and conclusions of law pursuant to 8 U.S.C. § 1421. We review the district court's factual findings for clear error and its legal conclusions de novo. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 688 F.3d 938, 941 (8th Cir. 2012). We will overturn a factual finding under this standard in only three circumstances: "if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (quotations and citations omitted).

The district court denied Hamod's petition for naturalization, concluding that he violated the terms of his visa by accepting employment from the ICCC before he received authorization to do so. Hamod challenges the district court's findings of fact with respect to his employment, arguing that he was not employed by the ICCC until after he received the required authorization. Because the district court's findings are supported by substantial evidence in the record, we affirm.

Hamod "bear[s] the burden of establishing by a preponderance of the evidence that he . . . meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b). Those requirements include establishing eligibility through strict compliance with all statutory mandates. *See INS v. Pangilinan*, 486 U.S. 875, 882–87 (1988); *Fedorenko*

*v. United States*, 449 U.S. 490, 506 (1981). In order to be naturalized, Hamod must show that he was "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a)(1). Lawful admission is absent if he "accept[ed] unauthorized employment prior to filing an application for adjustment of status . . . or . . . otherwise violated the terms of a nonimmigrant visa." 8 U.S.C. § 1255(c). The regulations in effect at the time prohibited Hamod from changing his employer after he arrived without the new employer filing a proper form. The pertinent regulation provided the following:

> *Change of employers.* A different or additional organizational unit of the religious denomination seeking to employ or engage the services of a religious worker admitted under this section shall file Form I-129 with the appropriate fee. . . . *Any unauthorized change to a new religious organizational unit will constitute a failure to maintain status* within the meaning of section 241(a)(1)(C)(i) of the Act.

8 C.F.R. § 214.2(r)(6) (1999) (emphasis added). Hamod does not dispute that the ICCC was not authorized to employ him until at least August 2, 2000, when the ICCC filed an I-360 Petition for Special Immigrant Religious Worker on Hamod's behalf. He simply asserts that he was not employed before that time.

The district court found that he began his employment with the ICCC before he was authorized to do so, "starting at least in early to mid-2000." Three of Hamod's own statements are central to the court's finding. First, Hamod stated on his 2007 naturalization application that he was employed by the ICCC from "7-15-2000" to the "present." He signed and certified that application under penalty of perjury. Second, in a sworn interview, Hamod said that he began working at the Al-Amal School in 1999 and was employed by them for "less than a year" before he started working for the ICCC; a letter from the school confirmed that he started working at the school in June 1999, more than one year before the ICCC filed the petition. Third, in his sworn, pretrial deposition, he testified that he was working at the ICCC as an Imam in April 2000. Hamod points to nothing in the record, other than his bald assertion that he was

previously mistaken, to undermine the district court's reliance on his certified naturalization application, his sworn statements, and the corroborating letters. Accordingly, the district court did not clearly err in finding that Hamod accepted unauthorized employment with the ICCC in violation of his visa.[2]

### III. *Conclusion*
We affirm the judgment of the district court.

––––––––––––––––––––––––––––––––

––––––––––––––––––––––

[2]The district court stated an alternative basis for its denial of Hamod's petition for naturalization. It concluded that "even if some of Hamod's religious worker services to the ICCC starting in 2000 were voluntary and not paid . . . , those services constitute unauthorized employment." Hamod argues that this conclusion violates his right to freely exercise his religion. In particular, he argues that because he was admitted to this country on a religious-worker visa that permitted him to work only at the religious school, the district court's decision regarding voluntary services punishes him for exercising his religion through volunteer work in his local community of faith. We decline to address Hamod's free-exercise claim, however, because the record clearly supports the district court's primary basis for the petition's denial—Hamod was actually employed by the ICCC before he received the authorization required by his visa. Additionally, we note that the regulatory landscape in this area has changed. The regulations now prohibit a volunteer religious worker from being "compensated for work for any religious organization other than the one for which a petition has been approved." 8 C.F.R. § 214.2(r)(13).