# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1335

_____

Orwa Ali Al-Saadoon; Farok Abdulmajid Hamod

*Petitioners - Appellants*

v.

William P. Barr, Attorney General of the United States of America; Lee Cissna, Director, United States Citizenship and Immigration Services; Leslie Tritten, Field Office Director, United States Citizenship and Immigration Services; Kirstjen Nielsen, Secretary of the United States Department of Homeland Security

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 14, 2020
Filed: August 28, 2020

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

SMITH, Chief Judge.

This case is the next chapter in an almost 20-year pursuit of naturalization by Farok Abdulmajid Hamod and his wife Orwa Ali Al-Saadoon. In *Al-Saadoon I*, we

affirmed the denial of Hamod's and Al-Saadoon's petitions for naturalization because Hamod engaged in unlawful employment, and, therefore, the couple never lawfully adjusted to permanent resident status. *Al-Saadoon v. Lynch* (*Al-Saadoon I*), 816 F.3d 1012 (8th Cir. 2016). In an attempt to remedy their unlawful adjustment, Al-Saadoon and Hamod filed a Supplement A to Form I-485[1] with the United States Customs and Immigration Services (USCIS) to adjust their status to lawful permanent residents *nunc pro tunc*[2] to 2002. They based the filing on their child's American citizenship and filed new applications for naturalization. USCIS rejected Hamod's and Al-Saadoon's requests for *nunc pro tunc* adjustment to lawful permanent resident status. The couple filed suit in the district court,[3] challenging USCIS's denial, the government moved to dismiss their petition, and the district court granted the motion. Hamod and Al-Saadoon appeal. We affirm.

## I. *Background*

In 1999, Hamod and Al-Saadoon, natives of Iraq, entered this country on a religious-worker visa after Hamod accepted a position as a teacher at the Al-Amal School in Minnesota. Hamod's visa prohibited him from changing employers without prior authorization from the Immigration and Naturalization Service (INS). In August 2000, the Islamic Cultural Community Center (ICCC) filed a petition seeking authorization to permanently employ Hamod as an Imam, and INS granted the petition in December. In 2002, Hamod and Al-Saadoon adjusted to permanent resident status.

---

[1]If someone is disqualified from adjustment of status, he/she may be eligible to adjust status under 8 U.S.C. § 1255(i).

[2]"*Nunc pro tunc*, a Latin phrase meaning 'now for then,' refers to the power of a court to treat something done now—typically a court order—as effective as of an earlier date." *Gutierrez-Castillo v. Holder*, 568 F.3d 256, 261 (1st Cir. 2009).

[3]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

In 2007, Hamod and Al-Saadoon sought naturalization. On the naturalization application, Hamod revealed that he began working for the ICCC before the ICCC filed the petition for authorization to employ him. Therefore, USCIS denied Hamod's and Al-Saadoon's petitions for naturalization. USCIS concluded that they had not been lawfully admitted to permanent resident status because Hamod had engaged in unauthorized employment.

Hamod and Al-Saadoon then filed suit in the District of Minnesota, but the district court agreed with USCIS that neither Hamod nor Al-Saadoon was eligible for naturalization. Our court affirmed. *See Al-Saadoon I*, 816 F.3d at 1015. We explained that Hamod and Al-Saadoon had to be lawfully admitted to permanent resident status before they would be eligible for naturalization. *Id.* at 1014. And, because Hamod accepted unauthorized employment, which was the basis for their adjustment to permanent resident status, Hamod and Al-Saadoon never lawfully adjusted to permanent resident status. *Id.* at 1014–15.

While *Al-Saadoon I* was still pending, in November 2014 and March 2015, Hamod and Al-Saadoon filed additional applications with USCIS. In November 2014, the couple's child filed a Form I-130 for both Hamod and Al-Saadoon to establish the existence of a qualifying family relationship between a citizen and an individual seeking lawful permanent residency. Then, they both filed a Form I-485, seeking lawful permanent residency on the basis of their child's citizenship. But, the couple did not stop there. In March 2015, the two filed a Supplement A to Form I-485, requesting that their adjustment to lawful permanent resident status be considered effective (or *nunc pro tunc*) August 21, 2002, the date of their previous adjustment to permanent resident status. Finally, Hamod and Al-Saadoon filed new naturalization applications.

In September 2016, USCIS denied Hamod's and Al-Saadoon's applications for naturalization because they were unlawfully admitted to permanent resident status.

USCIS also denied the request for *nunc pro tunc* relief to cure their unlawful admission through the filing of Supplement A to Form I-485. Hamod and Al-Saadoon then filed their second suit in the District of Minnesota, seeking review of USCIS's decision to deny their applications for naturalization and their request to cure their unlawful admission. *See Hamod v. Duke* (*Al-Saadoon II*), No. 16-cv-1191-JRT-TNL, 2017 WL 3668762 (D. Minn. Aug. 24, 2017). However, the district court determined that it lacked subject matter jurisdiction because Hamod and Al-Saadoon failed to exhaust administrative remedies available in their naturalization applications. *Id.* at *2.

Hamod and Al-Saadoon argued that the district court had jurisdiction to review USCIS's denial of their request for *nunc pro tunc* relief, but the district court rejected that argument, explaining:

> The Court does not find a separately reviewable issue as to Plaintiffs' request to cure their unlawful admission over which the Court could have subject matter jurisdiction at this time. Supplement A to Form I-485, which Plaintiffs rely on, is meant to supplement Form I-485 applications to adjust status, and thus it does not appear that Supplement A is a stand-alone application for particular relief. Based on the current record, it appears that Plaintiffs were asking USCIS to supplement their prior applications for adjustment of status *nunc pro tunc* to cure Plaintiffs' unlawful admissions in order to grant their naturalization applications. Accordingly, USCIS's denial of Plaintiffs' *nunc pro tunc* request formed part of the denial of Plaintiffs' naturalization applications. Thus, USCIS's decision—that USCIS cannot cure Plaintiffs' unlawful adjustment via the *nunc pro tunc* request and therefore Plaintiffs are not eligible for naturalization—will be reviewed in Plaintiffs' appeal of the denial of their naturalization applications.

*Id.*

Hamod and Al-Saadoon then went before an immigration officer, but on March 21, 2018, USCIS rejected their request for adjustment to lawful permanent resident status *nunc pro tunc* August 2002 because the Immigration Nationality Act (INA) "does not authorize USCIS to grant nunc pro tunc relief to a person unlawfully adjusted to permanent resident status." Appellants' App. at 58. But, USCIS further explained that even if it did have the authority, "USCIS would deny [the] request in the exercise of discretion" based on the conclusion that Hamod gave false information to the *Al-Saadoon I* court and failed to disclose his unauthorized ICCC employment. *Id.* Further, USCIS stated that *Al-Saadoon I* served as res judicata with respect to the remaining naturalization claims.

On July 18, 2018, Hamod and Al-Saadoon filed this action, challenging the denial of their request for adjustment to lawful permanent resident status *nunc pro tunc* and the denial of their naturalization applications. In addition, Hamod and Al-Saadoon alleged that they were victims of the Controlled Application Review and Resolution Program (CARRP). The government then filed a motion to dismiss, arguing that the district court lacked jurisdiction to review USCIS's decision regarding *nunc pro tunc* relief and that any naturalization claims were subject to res judicata. In their reply, Hamod and Al-Saadoon alleged for the first time that USCIS violated the Religious Freedom Restoration Act of 1993 (RFRA) in denying their requests for relief.

First, the district court concluded that 8 U.S.C. § 1421(c), which authorizes judicial review of USCIS's denial of a naturalization application, did not provide the court subject matter jurisdiction over the *nunc pro tunc* relief claim. It explained that adjustment to lawful permanent resident status and naturalization are two distinct classifications. Additionally, the district court rejected Hamod and Al-Saadoon's contention that *Al-Saadoon II* required it to review USCIS's denial of adjustment to lawful permanent resident status *nunc pro tunc*, explaining that *Al-Saadoon II* involved the narrower issue of exhaustion of remedies. Further, the district court

-5-

concluded that judicial review of the denial for relief on the adjustment to lawful permanent resident status under 8 U.S.C. § 1255(i) was barred by 8 U.S.C. § 1252(a)(2)(B)(i).

Because the district court found that it did not have jurisdiction to review the *nunc pro tunc* relief claim for adjustment to permanent resident status, it accordingly found that *Al-Saadoon I* precluded review of the remaining naturalization claims based on res judicata. The district court also considered Al-Saadoon and Hamod's CARRP claim. It concluded that Al-Saadoon and Hamod failed to plead sufficient facts to show that CARRP caused the denial of their relief. Finally, the district court considered Al-Saadoon and Hamod's allegation that USCIS violated the RFRA. The district court rejected the claim because (1) Al-Saadoon and Hamod failed to plead it in their petition, (2) they failed to state a plausible claim for relief, and (3) *Al-Saadoon I* precluded a RFRA claim. Thus, the district court granted the government's motion to dismiss. Al-Saadoon and Hamod appeal.

## II. *Discussion*

Al-Saadoon and Hamod seek to use "8 U.S.C. § 1255(i) to retroactively, or *nunc pro tunc*, waive any prior grounds of inadmissibility." Appellants' Br. at 13. Explained another way, they attempt to cure Hamod's unauthorized employment violation and retroactively adjust to lawful permanent resident status effective as of their original 2002 adjustment date. Such *nunc pro tunc* relief would make them eligible for naturalization.[4]

---

[4]In application, *nunc pro tunc* relief in immigration cases has been commonly used in only two situations: (1) to "grant the Attorney General's discretion to permit an alien to reapply for admission after being deported and subsequently reentering the country" or (2) "to apply the law as it existed at the time of [a] violation instead of current law." *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 910 (6th Cir. 2008). Neither scenario exists here.

*Nunc pro tunc* relief, in the immigration context, is most commonly used to provide relief "where agency error would otherwise result in [a petitioner] being deprived of the opportunity to seek a particular form of deportation relief." *Edwards v. INS*, 393 F.3d 299, 311 (2d Cir. 2004). Such relief "should be available whenever necessary to put the victim of agency error in the position he or she would have occupied but for the error." *Id.* at 310 (cleaned up).

Al-Saadoon and Hamod seek *nunc pro tunc* relief in unfamiliar territory, where no administrative error occurred. *See id.* Hamod and Al-Saadoon argue that *nunc pro tunc* relief is appropriate here because of the lengthy amount of time of their application process, and, thus, they allege that the district court improperly granted the government's motion to dismiss. Specifically, they argue that (1) the district court erroneously concluded that it did not have subject matter jurisdiction over the *nunc pro tunc* relief claim, (2) the district court erroneously concluded that review of their naturalization applications was barred by res judicata, (3) USCIS unlawfully denied them relief because of CARRP, and (4) USCIS violated the RFRA in refusing to grant *nunc pro tunc* relief. We review the district court's order granting a motion to dismiss de novo. *Haroun v. U.S. Dep't of Homeland Sec.*, 929 F.3d 1007, 1009 (8th Cir. 2019).

A. *Adjustment to Permanent Resident Status Applications*

Al-Saadoon and Hamod assert that the district court had jurisdiction to review USCIS's denial of *nunc pro tunc* relief on their adjustment to lawful permanent resident status through two different statutes: (1) 8 U.S.C. § 1421(c) or (2) the Administrative Procedure Act (APA).

1. *8 U.S.C. § 1421(c)*

Under 8 U.S.C. § 1421(c), a district court may review USCIS's denial of a naturalization application. Al-Saadoon and Hamod argue that because their Supplement A to Form I-485 request to adjust their status *nunc pro tunc* was a part

of their naturalization application, the district court had jurisdiction to review the request. However, Al-Saadoon and Hamod do not point to any authority for this proposition but, instead, argue that *Al-Saadoon II* precluded the district court from deciding the issue based on res judicata and mandated that the district court consider the *nunc pro tunc* relief as a part of the naturalization issue.

In *Al-Saadoon II*, the previous district court dismissed the case for Hamod and Al-Saadoon's failure to exhaust administrative remedies on their naturalization claims. Further, it declined to hear the *nunc pro tunc* relief claim. It explained that the request for *nunc pro tunc* relief would "be reviewed in [the] appeal of the denial of their naturalization applications" because "USCIS's denial of [Al-Saadoon and Hamod's] *nunc pro tunc* request formed part of the denial of [their] naturalization applications." *Al-Saadoon II*, 2017 WL 3668762, at *2.

Al-Saadoon and Hamod focus on this language to argue that the district court was required based on res judicata to consider the *nunc pro tunc* relief claim. "Our circuit has yet to decide whether res judicata applies in immigration proceedings." *Cardona v. Holder*, 754 F.3d 528, 529 (8th Cir. 2014). But, it is unnecessary to decide that question here because Al-Saadoon and Hamod fail to satisfy the res judicata elements.

> Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.

*Id.* at 530 (internal quotation omitted).

Al-Saadoon and Hamod fail to satisfy the second element—that *Al-Saadoon II* was a final judgment on the merits.[5] In *Al-Saadoon II*, the district court dismissed the case without prejudice for failure to exhaust administrative remedies and never reached the merits of the case. Ordinarily, a judgment dismissed without prejudice does not create a res judicata bar. *See Rosemann v. Roto-Die, Inc.*, 276 F.3d 393, 398 (8th Cir. 2002). As the Sixth Circuit has explained in the immigration context, "a judgment dismissing a case without prejudice is not truly final. Generally speaking, a dismissal without prejudice means a dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Arangure v. Whitaker*, 911 F.3d 333, 347 (6th Cir. 2018) (internal quotations omitted). The *Al-Saadoon II* court's refusal to hear the *nunc pro tunc* relief claim until Al-Saadoon and Hamod exhausted their administrative remedies on the naturalization issue did not preclude the district court here. The district court properly considered whether it had jurisdiction to review the *nunc pro tunc* relief claim under § 1421(c) and was not barred from doing so by res judicata.

Further, the district court correctly concluded that § 1421(c)'s jurisdiction over naturalization claims does not extend to lawful permanent resident status claims. Although Al-Saadoon and Hamod try to incorporate their lawful permanent resident status issue into their request for naturalization, the two are clearly separate requirements. As we explained in *Al-Saadoon I*, "[i]n order to be naturalized, Hamod must show that he was 'lawfully admitted for permanent residence.'" 816 F.3d at 1014 (quoting 8 U.S.C. § 1427(a)(1)). Although being lawfully admitted for permanent residence is a prerequisite to naturalization, *see* 8 U.S.C. § 1429, it is a separate process from naturalization. Our conclusion is also supported by 8 U.S.C. § 1252(a)(2)(B)(i), which bars judicial review of a discretionary denial of an

---

[5]Because this issue is resolved by the second element, we do not consider whether the other two elements of res judicata are satisfied.

adjustment of status application. *See Sugule v. Frazier*, 639 F.3d 406, 410–11 (8th Cir. 2011).

The district court correctly concluded that naturalization and adjustment to permanent resident status are distinct. Permanent resident status is just one step in the naturalization process. The district court could not review the adjustment to permanent resident status *nunc pro tunc* claim as a part of the ultimate naturalization issue. The district court did not have jurisdiction under § 1421(c) to review USCIS's denial of Al-Saadoon's and Hamod's requests for their lawful permanent resident status to be reinstated *nunc pro tunc*.

## 2. *APA*

Second, Al-Saadoon and Hamod argue that the district court had jurisdiction to review the denial of *nunc pro tunc* relief under the APA. "There is a basic presumption of judicial review of final agency action, but this presumption may be overridden in certain circumstances." *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008) (en banc) (per curiam) (cleaned up). For instance, "[t]he [APA] declares that its provisions for judicial review do not apply when (1) a statute precludes judicial review, or (2) agency action is committed to agency discretion by law." *Id.*

Here, a statute precludes judicial review. "[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C. §] 1255 . . . ." 8 U.S.C. § 1252(a)(2)(B)(i).[6] We have explained that this statute "forecloses our review of the denial of adjustment of status." *Sugule*, 639 F.3d at 411. However, "even if § 1252(a)(2)(B) otherwise bars review of a discretionary act, we have jurisdiction to review a predicate legal question that amounts to a

---

[6]Al-Saadoon and Hamod's argument that this jurisdictional bar only applies to removal proceedings is incorrect. The statute limits review "regardless of whether the judgment . . . is made in removal proceedings." *Id.* § 1252(a)(2)(B).

-10-

nondiscretionary determination underlying the denial of relief." *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) (internal quotation omitted).

Al-Saadoon and Hamod argue that their denial of adjustment to permanent resident status is a legal issue because they met the criteria of 8 U.S.C. § 1255(i). But, Al-Saadoon and Hamod actually seek *nunc pro tunc* relief. We have previously stated that it is "highly doubtful" that federal courts have jurisdiction over issues involving *nunc pro tunc* relief "because the extent of [this] administrative remedy is a quintessentially discretionary agency action." *Id.* at 822–23.

And, even if Al-Saadoon and Hamod did raise a legal issue involving whether they were eligible for adjustment of status, it is "immaterial whether [they were] statutorily []eligible for adjustment of status, because the [USCIS] separately denied adjustment as a matter of discretion." *Toby v. Holder*, 618 F.3d 963, 967–68 (8th Cir. 2010). USCIS stated that "[a]ssuming arguendo that *nunc pro tunc* under INA § 245(i) is available, as an inherently equitable remedy it would necessarily be considered discretionary, and as such, USCIS would deny [the] request in the exercise of discretion." Appellants' App. at 58 (italics added). The district court properly held that it did not have jurisdiction to review USCIS's discretionary denial of Al-Saadoon's and Hamod's requests for their lawful permanent resident status to be reinstated *nunc pro tunc*.

## B. *Naturalization Applications*

Al-Saadoon and Hamod also argue that the district court erred in granting the motion to dismiss on their naturalization claims. The district court had jurisdiction over the naturalization applications through § 1421(c). The government counters, however, that res judicata barred the district court from considering the naturalization claims. Specifically, it contends that *Al-Saadoon I* already considered Al-Saadoon's and Hamod's naturalization applications.

As previously stated, "[r]es judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Cardona*, 754 F.3d at 530 (internal quotation omitted). No one disputes that the first two elements are met. Nevertheless, Al-Saadoon and Hamod argue that the current case is not the "same cause of action" because it involves their appeal for *nunc pro tunc* relief.

This argument fails. Even if the current case were a different cause of action, the district court properly dismissed Al-Saadoon's and Hamod's request for *nunc pro tunc* adjustment of status. Adjustment to lawful permanent resident status is a prerequisite to naturalization. *See* 8 U.S.C. § 1429. Because Al-Saadoon and Hamod failed to adjust their status to lawful permanent residents, they cannot meet the requirements for naturalization. *See Al-Saadoon I*, 816 F.3d at 1014–15.

And, to the extent that Al-Saadoon and Hamod attempt to relitigate the determination that they were unlawfully admitted to permanent resident status in 2002, they are barred by res judicata. *Al-Saadoon I* clearly determined that they did not meet the requirements for naturalization. *See id.* Because the request for *nunc pro tunc* adjustment of status was properly dismissed, all that remains is a request for naturalization that is no different than the naturalization applications considered in *Al-Saadoon I*. The district court properly dismissed any remaining naturalization claims.

## C. *CARRP*

In addition, Al-Saadoon and Hamod argue that they were victims of CARRP. Our circuit has yet to consider a CARRP claim. Al-Saadoon and Hamod point to a class action lawsuit from a district court in Washington to explain the premise of CARRP. *See Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017). CARRP is an allegedly secret government program created by USCIS

"as an agency-wide policy to identify, process, and adjudicate certain immigration applications that allegedly raise national security concerns." *Id.* at \*1 (internal quotations omitted). CARRP often uses factors such as religion and national origin. *Id.* Even if an applicant meets all of the requirements for naturalization, USCIS officers are not allowed to approve a CARRP application and are required to deny or delay the application for as long as possible. *Id.*

Al-Saadoon and Hamod describe in great detail how CARRP allegedly works. They state that CARRP was likely applied to their naturalization applications because "what transpired here strikingly looks and potently smells like CARRP." Appellants' Br. at 23. In their petition, they allege "[u]pon information and belief" that USCIS delayed their application, considered Hamod to be a national security threat, and inspected Hamod's allegedly "anti-West statements" because of CARRP. Appellants' App. at 33. Further, they allege that "CARRP is the only reason Mr. Hamod and Mrs. Al-Saadoon's multiple petitions have languished at USCIS for well over a decade and suffered multiple denials over this time period." *Id.* at 36.

In order to survive a motion to dismiss for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Conclusions or "naked assertions" are not enough. *Id.* at 678 (cleaned up). Factual allegations must cross "the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (cleaned up).

Al-Saadoon and Hamod's CARRP claim fails "because the plaintiffs' pleadings, on their face, have not provided anything to support their claim that" USCIS denied their applications because of CARRP, "other than labels and conclusions, based on speculation." *Karnatcheva v. JPMorgan Chase Bank*, 704 F.3d 545, 548 (8th Cir. 2013). Al-Saadoon and Hamod provide broad allegations of how

the CARRP program works, but they fail to allege how CARRP individually impacted their immigration proceedings. Without allegations connecting the denial of their naturalization applications to the CARRP program, their CARRP claim fails.

Al-Saadoon and Hamod primarily allege that they were victims of CARRP because USCIS "invented false and pretextual reasons for denial of [their original] naturalization by alleging that [Hamod's] volunteer activities . . . were unauthorized employment." Appellants' App. at 34. But, they fail to rebut the "primary basis for the petition's denial—Hamod was actually employed by the ICCC before he received the authorization required by his visa." *Al-Saadoon I*, 816 F.3d at 1015 n.2. The allegations that they make fly directly into the face of *Al-Saadoon I*. *Al-Saadoon I* concluded that the original naturalization applications were correctly rejected. *See id.* at 1015. Al-Saadoon and Hamod have failed to allege sufficient facts to establish that CARRP caused the denial of their applications. *See Milakovich v. USCIS-Orlando*, 500 F. App'x 873, 876–77 (11th Cir. 2012) (per curiam) (explaining that the petitioner's constitutional claims failed to state a claim for relief because the petitioner failed to dispute the fact that he was ineligible to file an I-600 application).

Besides larger claims about the existence of CARRP, Al-Saadoon and Hamod fail to provide any facts in the complaint to show how CARRP caused USCIS to deny their new requests for *nunc pro tunc* adjustment of status relief. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." (cleaned up)). The district court correctly dismissed Al-Saadoon and Hamod's CARRP claim.

### D. *RFRA*

Finally, Al-Saadoon and Hamod argue that USCIS's denial of their request for *nunc pro tunc* relief violates the RFRA. As previously explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation omitted). Al-Saadoon and Hamod's RFRA claim fails because they did not assert a claim for relief under RFRA in their petition. In fact, Al-Saadoon and Hamod did not make their RFRA claim until after the government filed its motion to dismiss.[7] *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

_____

[7]Al-Saadoon and Hamod also allege that USCIS abused its discretion in denying their requests for *nunc pro tunc* relief because they are seeking equitable relief with clean hands. And, they argue that Hamod meets the good moral character requirement for naturalization. We decline to address the merits of these issues because "ordinarily, we do not decide issues that the district court did not adjudicate." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 603 (8th Cir. 2009) (cleaned up).