# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2024

Lyle W. Cayce
Clerk

————————

No. 23-10437

————————

Isimeme Anita Horak,

*Plaintiff—Appellant*,

*versus*

U.S. Citizenship and Immigration Services,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1925

_____

Before Clement, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:[*]

United States Citizenship and Immigration Services ("USCIS") denied Isimeme Anita Horak's application for naturalization after it determined that Horak's marriage to her ex-husband—which she had used to obtain permanent resident status in the United States—was a sham. The district court denied Horak's petition for judicial review. We AFFIRM.

\* \* \*

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10437

Horak, a Nigerian citizen, entered the United States on a six-month tourist visa in December 2005. In January 2006, she started a relationship with Cecil Lofton Jr., a United States citizen, and they married eight months later, in August 2006. Horak obtained Conditional Permanent Resident status as the spouse of a United States citizen in November 2006 and Permanent Resident status in May 2009. Horak filed for divorce from Lofton in October 2010, citing "discord or conflict of personalities."

In December 2014, Horak applied for naturalization. USCIS flagged Horak's application on suspicion of marriage fraud and, after investigation, determined that Horak's marriage to Lofton was a sham. USCIS therefore denied Horak's application for naturalization. After Horak requested and received an administrative hearing, USCIS adhered to its denial. Horak then petitioned for judicial review.

The district court conducted a two-day bench trial at which both Lofton and Horak testified. Lofton testified that he learned of Horak's immigration status "after a month or two of dating" and that he married Horak because he "wanted to help her." Lofton explained that, after the wedding, he and Horak "never lived together," were never intimate with each other, and that shortly after he signed Horak's application for Conditional Permanent Resident status in October 2006, the two "went [their] separate ways." According to Lofton, by the time Horak filed her petition to remove the conditions on her residence in August 2008, Lofton was living with another woman—Miriam Suarez—who gave birth to the couple's first child that September. Lofton and Suarez would go on to have two more children together and lived as a family until her death in 2020.

Horak, on the other hand, testified that she and Lofton loved each other, were regularly intimate, and were living together through early 2009, when Lofton finally revealed to Horak his relationship with Suarez and the

child they had together. Horak testified that she and Lofton separated in April 2009 due to Lofton's alleged infidelity, but she also conceded that this date was inconsistent with the November 2009 separation date she had listed in her divorce petition and that she had said nothing about any infidelity in her divorce petition or in her initial interviews with USCIS.

Ruling from the bench, the district court explained that it found Horak's testimony "not to be credible" and determined that Horak was ineligible for naturalization because she had engaged in a sham marriage.[1]

On appeal, Horak does not contest the legal basis for the district court's ruling. Nor could she. To be eligible for naturalization, Horak was required to establish by a preponderance of the evidence[2] that, among other requirements, she was "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a). Horak had been granted permanent residence by virtue of her status as an "alien spouse," *i.e.*, the spouse of a United States citizen. *See* 8 U.S.C. § 1186a. However, a "marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, has not been recognized as enabling an alien spouse to obtain immigration benefits." *Brown v. Napolitano*, 391 F. App'x 346, 351

---

[1] The court also held that Horak was ineligible for naturalization because she had submitted false statements in support of her application. However, because we find no clear error in the district court's determination that Horak was not lawfully admitted for permanent residence in the United States, we need not and do not address this alternative basis for denying Horak's petition.

[2] Horak claims that, despite the fact that the parties both used the preponderance-of-the-evidence standard in their proposed findings of fact and conclusions of law and that the district court repeatedly stated it was applying the preponderance-of-the-evidence standard during its oral ruling, "in reality, [the district court] applied [the] beyond a reasonable doubt standard." We see nothing in the record substantiating Horak's argument and therefore reject it. *See Barto v. Shore Const., LLC*, 801 F.3d 465, 471–72 (5th Cir. 2015) (rejecting argument that district court "somehow *sua sponte* settled upon an incorrect legal standard" "[u]pon a review of the entire record").

(5th Cir. 2010) (quoting *In re Laureano*, 19 I. & N. Dec. 1, 2 (B.I.A. 1983)). So, if the district court correctly concluded that Horak's marriage to Lofton was a sham, then she was not "lawfully admitted to the United States for permanent residence" and was therefore ineligible for naturalization. *See* 8 U.S.C. § 1429.

Horak disagrees with the district court's finding that her marriage was a sham, arguing that the district court should have credited her testimony over that of Lofton. But the district court's determination that Horak's marriage was a sham is a finding of fact that we review for clear error. *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020); *see also Al-Saadoon v. Lynch*, 816 F.3d 1012, 1014 (8th Cir. 2016); *United States v. Hovsepian*, 359 F.3d 1144, 1165 (9th Cir. 2004). And where, as here, "a trial judge's [factual] finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

Horak has not established that Lofton's facially plausible story is contradicted by extrinsic evidence or that the district court's credibility finding is internally inconsistent. Instead, she simply asks this court to reweigh the evidence presented at trial, which we will not do. *See Deloach Marine Servs., LLC v. Marquette Transp. Co.*, 974 F.3d 601, 607 (5th Cir. 2020) ("[W]e employ a strong presumption that the [district] court's findings must be sustained even though this court might have weighed the evidence differently.") (quotation marks and citations omitted).

AFFIRMED.

4