# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2024

Lyle W. Cayce
Clerk

———————

No. 23-40398

———————

Ashok Kumar Cheejati; Karthik Rajashekaran; Nishant Mathur; Haragopal Chakravarthy; Seshu Gavara; Et al.,

*Plaintiffs—Appellants*,

*versus*

Antony Blinken, *Secretary, U.S. Department of State*; Ur M. Jaddou, *Director of U.S. Citizenship and Immigration Services*,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:23-CV-600

———————————————————

Before Richman, *Chief Judge*, and Oldham and Ramirez, *Circuit Judges*.

Irma Carrillo Ramirez, *Circuit Judge*:

The opinion issued April 9, 2024[1] is WITHDRAWN, and the following opinion is SUBSTITUTED.

---

[1] *Cheejati v. Blinken*, 97 F.4th 988 (5th Cir. 2024).

No. 23-40398

Appellants are a group of lawfully admitted Indian nationals who have applied for permanent residency. They sued Secretary of State Antony Blinken, in his official capacity ("DOS"), and United States Citizenship and Immigration Services Director Ur M. Jaddou, in her official capacity ("USCIS"), challenging their approach to distributing immigrant visas. Because subject-matter jurisdiction is lacking, we must VACATE and REMAND with instructions to dismiss.

## I. BACKGROUND

Appellants are nonimmigrants[2] legally present in the United States on employment-based visas chargeable to India. They have all filed Forms I-485 seeking adjustment of status to lawful permanent residents. Before an alien's status can be adjusted, a visa number must be available to him. As of June 2023, shortly before this suit was filed, DOS had estimated that visa numbers were immediately available to Appellants, so Appellants had all applied for status adjustments. But visa demand in mid-2023 was higher than expected, and ultimately, visa numbers were not immediately available to Appellants. As a result, Appellants' applications were held in abeyance until a visa number became available.

Appellants challenge the delay in adjudicating their I-485 applications. They maintain that DOS's and USCIS's policies of deferring adjudication of the applications until a visa number becomes available violate the clear language of the statute governing adjustment of status for nonimmigrants, 8 U.S.C. § 1255(a). They seek injunctive and declaratory relief under § 706(1)

---

[2] "The Immigration and Nationality Act distinguishes between immigrant and nonimmigrant aliens[.] … An alien falling into one of fifteen exclusionary categories is a nonimmigrant alien, a class generally delimited by a lack of intention to abandon his foreign country residence and entry into the United States for specific and temporary purposes." *LeClerc v. Webb*, 419 F.3d 405, 410 n.2 (5th Cir. 2005).

of the Administrative Procedure Act[3] (APA) and the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Below, they moved for a preliminary injunction; that motion was denied, and they appeal that decision.

## II. STANDARD OF REVIEW

We review the denial of a preliminary injunction for abuse of discretion, but any underlying legal principles are reviewed *de novo. Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006). Before reaching the merits of an appeal, however, "we must first assure ourselves of our own federal subject matter jurisdiction." *La. Real Est. Appraisers Bd. v. FTC*, 917 F.3d 389, 391 (5th Cir. 2019) (per curiam) (internal quotations omitted) (quoting *Keyes v. Gunn*, 890 F.3d 232, 235 n.4 (5th Cir. 2018)); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (Federal courts have an "independent obligation to determine whether subject-matter jurisdiction exists[.]"). Issues of subject-matter jurisdiction are reviewed *de novo. Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009).

## III. THE IMMIGRATION AND NATIONALITY ACT

The Immigration and Nationality Act (INA) governs visa allocation for foreign nationals wanting to enter the United States. In the INA,

---

[3] Section 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed[.]

5 U.S.C. § 706.

No. 23-40398

Congress conferred upon the Attorney General[4] the discretion to adjust the status[5] of an alien to lawful permanent resident:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

The INA also sets the number of visas that can be allocated during each fiscal year, determined based on the type of visa and the country of origin of the applicant. *Id.* § 1152. These caps apply to both foreign nationals seeking to enter the United States and aliens currently in the United States who apply for an adjustment of status. To ensure the proper number of visas is issued, Congress permitted the Secretary of State to "make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the categories [listed in the statute] and to rely upon such estimates in authorizing the issuance of visas." *Id.* § 1153(g).

---

[4] The Attorney General's authority under this provision has been delegated in relevant part to USCIS. *See, e.g.*, 6 U.S.C. §§ 271(b)(5), 455(c).

[5] Adjustment of status is a mechanism by which an alien's status may be changed to that of lawful permanent resident without requiring the alien to leave the United States. *See Marques v. Lynch*, 834 F.3d 549, 554 (5th Cir. 2016).

No. 23-40398

DOS looks to data from consular officers and USCIS to arrive at these estimates.[6]

DOS communicates these estimates to the public on the Visa Bulletin, which is published monthly on the DOS website, by reference to applicants' Final Action Dates. For purposes of a lawful nonimmigrant seeking adjustment of status, a Final Action Date is, in its simplest form, the date on which the applicant's current visa (for instance, his employment-based visa) was first obtained. The Visa Bulletin lists the latest possible Final Action Date that would render an applicant eligible for a visa. In other words, any applicant with a Final Action Date earlier than the date listed on the Visa Bulletin can apply for a visa number, and DOS estimates that one will be immediately available to him. Section 1255(a)(3) therefore requires that, on the date an application for adjustment of status is filed, the applicant's Final Action Date must predate the one listed on the Visa Bulletin for the applicable visa category.

Occasionally, DOS will overestimate the number of available visas, or actual demand will outpace the projected demand upon which DOS's estimates were based. When this occurs, to avoid allocating too many visas, DOS will change the relevant Final Action Date to an earlier date to reflect the fact that fewer applicants will have a visa number available to them.[7] This

---

[6] *See* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for March 2024*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-march-2024.html [https://perma.cc/42RQ-2KNC].

[7] *Compare* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for June 2023*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-june-2023.html [https://perma.cc/BRE3-BLBS], *with* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for July 2023*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-july-2023.html [https://perma.cc/EDP3-JPXF].

process is called retrogression. When a Final Action Date retrogresses, it is possible that an individual applicant could have been eligible to apply for adjustment of status on one day, but ineligible the next. Typically, when the new fiscal year begins in October, more visa numbers will become available, and DOS will undo the retrogression, often resetting the relevant Final Action Date to the latest date previously listed. And when retrogression renders previously eligible applicants ineligible for approval, DOS and USCIS each have a policy of holding the application in abeyance until a visa number becomes available. The parties refer to these policies as the "retrogression hold policies."

Relevant to this appeal, the June 2023 Visa Bulletin listed the Final Action Date for determining visa number availability for Appellants as June 15, 2012.[8] But the following month, the Final Action Date retrogressed to January 1, 2009.[9] Visa numbers were available to all Appellants as of June 2023 because they all have Final Action Dates before June 15, 2012. But the July 2023 retrogression rendered them ineligible for adjustment of status. The March 2024 Visa Bulletin lists the relevant Final Action Date as July 1, 2012.[10]

Once an application for adjustment of status is approved, the Attorney General is statutorily required to "record the alien's lawful admission for

---

[8] *See* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for June 2023*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-june-2023.html [https://perma.cc/BRE3-BLBS].

[9] *See* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for July 2023*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-july-2023.html [https://perma.cc/EDP3-JPXF].

[10] *See* U.S. DOS—Bureau of Consular Affairs, *Visa Bulletin for March 2024*, The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-march-2024.html [https://perma.cc/42RQ-2KNC].

permanent residence as of the date" of the approval, and DOS must "reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current." 8 U.S.C. 1255(b).

## IV. JURISDICTION

DOS and USCIS contend that federal courts do not have jurisdiction to address Appellants' challenge because the jurisdiction-stripping provisions in the INA preclude it.[11]

The INA strips federal courts of jurisdiction to address many challenges brought in the context of immigration proceedings. Relevant here, 8 U.S.C. § 1252 dictates that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

---

[11] DOS and USCIS also argue that Appellants lack standing and the case has been rendered moot because (1) several of Appellants' I-485 applications have been approved and (2) the Final Action Date retrogression that rendered Appellants ineligible for adjustment of status has been reversed. We may address jurisdictional issues in any order we choose. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). It is not obvious from the pleadings or briefs that the controversy is moot for two reasons: (1) Appellants complain that the mere delay of their applications harmed them by reducing the time spent as lawful permanent residents, working towards becoming naturalized citizens, and (2) it is not clear whether some of the individuals who are now eligible have ultimately received approval of their applications. Accordingly, we begin and end with DOS's and USCIS's statutory argument.

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]

8 U.S.C. § 1252(a)(2)(B). Subparagraph (D) contains an exception for review of "constitutional claims or questions of law raised upon a petition for review," *id.* § 1252(a)(2)(D), and has been interpreted as applying only when a petition for review is filed directly in the appropriate court of appeals, *see, e.g.*, *Mendoza v. Mayorkas*, No. 23-20043, 2023 WL 6518152, at *2 & n.1 (5th Cir. Oct. 5, 2023) (per curiam) (collecting cases).

As discussed, the INA provides that "[t]he status of an alien who was admitted or paroled into the United States … *may* be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if" the alien meets the three criteria listed in the statute. 8 U.S.C. § 1255(a) (emphasis added).

In noting that § 1252(a)(2)(B) likely strips federal courts of jurisdiction to hear Appellants' suit, the district court cited to the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328, 338 (2022), which endorsed an expansive reading of § 1252(a)(2)(B). There, the petitioner's application for adjustment of status was denied because he had previously misrepresented his citizenship when applying for a Georgia driver's license and was therefore ineligible for status adjustment. *Id.* at 334. He sought review of that denial. *Id.* at 335. In holding that federal courts lack jurisdiction to review factual findings upon which a discretionary decision is based, the

Supreme Court emphasized the broad language used in § 1252(a)(2)(B)(i): "it prohibits review of *any* judgment *regarding* the granting of relief under § 1255[.] As this Court has repeatedly explained, the word 'any' has an expansive meaning." *Id.* at 338 (internal quotations omitted) (quoting *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020)). Section 1252(a)(2)(B)(ii) similarly uses the word "any": courts are without jurisdiction to review "*any* other decision or action of the Attorney General or the Secretary of Homeland Security . . .." Under *Patel*, "any" operates to augment the purview of § 1252(a)(2)(B)(ii) to preclude judicial review of DOS's and USCIS's retrogression hold policies, which are practical applications of the discretion afforded the Attorney General in § 1255(a).

Also useful is our vacated decision in *Bian v. Clinton*, 605 F.3d 249 (5th Cir. 2010). The facts of *Bian* are virtually identical to those presented here: the petitioner was lawfully present in the United States on an employment-based visa and filed an I-485 application to adjust her status. *Id.* at 251. Because there were no visa numbers available to applicants in her visa category, the adjudication of her application was delayed. *Id.* Frustrated by the delay, the petitioner filed suit "seeking to compel [USCIS] to adjudicate her I-485 application for adjustment of immigration status." *Id.*

*Bian* held that federal courts lacked jurisdiction to hear the case because § 1252(a)(2)(B)(ii) precluded review of "the USCIS's pace of adjudication." *Id.* at 252–53. The court concluded that the word "action" in § 1252(a)(2)(B)(ii) would be superfluous if the provision stripped the courts of jurisdiction to review only final, discrete decisions. *Id.* at 253–54 ("If Congress had intended for only USCIS's ultimate decision to grant or deny an application to be discretionary—as distinguished from its interim decisions made during the adjudicative process—then the word 'action' would be superfluous."). Therefore, the conduct that the petitioner complained of in *Bian*—the same conduct to which Appellants object here—

was an "action" undertaken by the Attorney General for purposes of § 1252(a)(2)(B)(ii).

Moreover, as *Bian* noted, § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review *any discretionary* decision or action rendered by the Attorney General. Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General: applications for adjustment of status are adjudicated "in [the Attorney General's] discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). And we recently held, albeit in an unpublished case, that the pace of USCIS's adjudication is left to its discretion, with "no clear mandate" requiring USCIS to act within a certain timeframe. *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023). Accordingly, the discrete acts undertaken to render an adjustment decision and the timing of those acts are determined by the Attorney General in his discretion, and that discretionary action cannot be reviewed by federal courts. 8 U.S.C. §§ 1252(a)(2)(B)(ii), 1255.

Exercising his § 1255 authority, the Attorney General promulgated regulations to facilitate the adjustment of status decision-making process, including the regulations Appellants challenge here, such as 8 C.F.R. § 245.2. The retrogression hold policies are effectuated through discrete acts by DOS and USCIS, informed by these regulations. For instance, DOS amends the Visa Bulletin to establish a new Final Action Date, and USCIS decides to delay adjudicating the applications or, in other words, sets the status of an application to pending. *See Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024) (noting that "USCIS decided to delay adjudicating the [plaintiffs'] status adjustment applications" and that decision constituted an "action" for purposes of § 1252(a)(2)(B)(ii)). These regulations, and the conduct they

direct DOS and USCIS to undertake, are therefore "action[s] of the Attorney General … the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). Although *Bian* was later vacated because a visa number became available to the petitioner and the case was rendered moot, we find its reasoning persuasive.

Our reading of § 1252(a)(2)(B) also comports with that of the only other circuit to address the issue. The Eighth Circuit recently concluded that it lacked subject-matter jurisdiction to hear a similar challenge. *Thigulla*, 94 F.4th at 777–78. In *Thigulla*, the plaintiffs sought to adjust their status from lawful nonimmigrants present in the United States on temporary work visas to lawful permanent residents. *Id.* at 772. The plaintiffs' priority dates retrogressed, and USCIS delayed adjudication of their applications as a result. *Id.* at 772–73. The plaintiffs sued USCIS under the APA, seeking to compel it to promptly render a decision with respect to their applications. *Id.* at 773. Noting that only "clear and convincing" evidence of Congress's intent can overcome the presumption in favor of judicial review of agency decisions, the court considered the text of §§ 1252(a)(2)(B) and 1255. *Id.* at 773–75. The court concluded that "[t]he text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a), like the [retrogression hold policies]." *Id.* at 776. We find the Eighth Circuit's analysis persuasive and agree with its conclusion.

Appellants argue that § 1252(a)(2)(B)(ii) does not apply here because the statute's title indicates that it was intended to apply only to decisions related to removal. They cite to the Supreme Court's decision in *INS v. National Center for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991), for the proposition that the title of a statute can aid a court in resolving an ambiguity

in the statutory language. But there is no ambiguity to be resolved here: § 1252(a)(2)(B) expressly states that it applies "regardless of whether the judgment, decision, or action is made in removal proceedings[.]" 8 U.S.C. § 1252(a)(2)(B). Several of our sister circuits have applied § 1252(a)(2)(B) in cases that did not involve removal. *See, e.g.*, *Al-Saadoon v. Barr*, 973 F.3d 794, 802 n.6 (8th Cir. 2020) ("[Petitioners'] argument that [§ 1252(a)(2)(B)] only applies to removal proceedings is incorrect. The statute limits review 'regardless of whether the judgment … is made in removal proceedings.'"); *Abuzeid v. Mayorkas*, 62 F.4th 578, 586 (D.C. Cir. 2023) (no jurisdiction to review denial of petitioner's application for adjustment of status from student visa holder to lawful permanent resident); *Juras v. Garland*, 21 F.4th 53, 60 (2d Cir. 2021) (no jurisdiction to review withdrawal of application for admission to the United States); *Thigulla*, 94 F.4th at 777. And § 1255 applies in both removal proceedings and proceedings unrelated to removal; there is no evidence in the text of the statute that Congress intended to strip federal courts of jurisdiction as to one type of discretionary conduct, but not as to another.

We have previously noted "the general expectation that federal courts address subject-matter jurisdiction at the outset in the 'mine run of cases[.]'" *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007)). Because § 1252(a)(2)(B)(ii) precludes federal courts from hearing challenges like this one, we must vacate the order denying the motion for preliminary injunction and remand with instructions to dismiss this case for lack of subject-matter jurisdiction.

## V. APA

Alternatively, to the extent our jurisdictional conclusion is incorrect, Appellants are still not entitled to a preliminary injunction because they have not shown that they are likely to succeed on the merits of their APA claim.

Section 706 of the APA commands courts to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). Appellants assert an "unlawful withholding" claim. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 64 (2004) (emphasis in original). In other words, "[a] court's authority to compel agency action is limited to instances where an agency ignored 'a specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend County v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023) (quoting *SUWA*, 542 U.S. at 63).

Here, Appellants have identified no unequivocal mandate with which USCIS has failed to comply. Appellants contend that the Government's past admissions that applicants are entitled to a decision regarding their applications for adjustment of status establish that the agency action at issue here is required. They also argue that requirement is set out in USCIS's own regulations. For example, 8 C.F.R. § 245.2(a)(5) provides that "the applicant shall be notified of the decision[.]" But this argument is unavailing because it does not establish a time period during which the applications must be adjudicated. Appellants do not posit that USCIS will *never* render a decision on their applications; they take issue with the pace at which those decisions are made. None of these regulations or admissions at oral argument establish that USCIS has failed to do something it is required to do.

Appellants cite to authority from other circuits for the proposition that *SUWA* did not create a statutory deadline requirement to assert a claim

under § 706. But we have held, albeit in an unpublished opinion, that the challenge brought by Appellants did not give rise to a claim under § 706 because "there is no clear mandate here such that we can say the USCIS was *required* to act within six months, or even within a year." *Li*, 2023 WL 3431237, at *1. Appellants have not sufficiently alleged that any binding authority requires USCIS to adjudicate applications for adjustment of status differently than it is currently adjudicating them. For that reason, Appellants cannot show a likelihood of success on the merits of their APA claim, so they are not entitled to a preliminary injunction.

## VI. CONCLUSION

For these reasons, we hold that § 1252(a)(2)(B)(ii) prevents us from hearing a challenge to DOS's and USCIS's retrogression hold policies, as they are actions undertaken by the Attorney General and expressly left to his discretion under § 1255(a). The district court's decision is VACATED, and the case is REMANDED with instructions to dismiss for lack of subject-matter jurisdiction.

No. 23-40398

Andrew S. Oldham, *Circuit Judge*, concurring in part:

I agree with the majority that we lack jurisdiction over this case. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). I would simply dismiss, rather than render an alternative, hypothetical judgment on the merits. *See United States v. O'Grady*, 89 U.S. (22 Wall.) 641, 647–48 (1874) ("Judicial jurisdiction implies the power to hear and determine a cause" and render "judgment in a court of competent jurisdiction."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) ("For a court to [reach the merits] when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *Spivey v. Chitimacha Tribe of Louisiana*, 79 F.4th 444, 449 (5th Cir. 2023) (holding absence of jurisdiction forecloses any judgment on the merits).